UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EDGAR VEYTIA,

        Plaintiff,

  v.

BUREAU OF PRISONS,

        Defendant.

Civil Action No. 21-1829 (ABJ)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant the Bureau of Prisons ("Defendant" or "BOP"), by and through undersigned counsel, respectfully submits this Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment in response to the Complaint filed by Edgar Veytia ("Plaintiff").

## INTRODUCTION AND SUMMARY

Plaintiff, an inmate, seeks records under the Freedom of Information Act, 5 U.S.C. § 552, ("FOIA") pertaining to his incarceration at the United States Penitentiary, Marion, Illinois, and at the Metropolitan Detention Center in Brooklyn, New York. He submitted several requests with subparts, generally seeking records about his classification, his movement between facilities that were appropriate for his classification, and investigations of his activities at these facilities, and those of a correctional officer. Prior to and during the pendency of this action, the BOP has released thousands of pages of records and withheld others subject to appropriate exemptions. As set forth in the attached Declaration of Kara Christenson, the BOP conducted an adequate search for responsive records and justified its withholdings under Exemptions 5, 6 and 7(C), including a

*Glomar* response, and Exemption 7(E) and 7(F).  Summary judgment in favor of BOP is due.

## BACKGROUND

Plaintiff is currently incarcerated at the Metropolitan Detention Center in Brooklyn, N.Y. ("Detention Center").  *See* Ex. A, Declaration of Kara Christenson ¶ 5 ("Christenson Decl."); *see also* https://www.bop.gov/inmateloc/.  Plaintiff had done a prior stint at the Detention Center between April 2017 and January 2020.  *See* ECF No. 1 ¶ 7 ("Pl's Comp").  It appears that between January 2020 and his return to the Detention Center, Plaintiff had been incarcerated at the BOP's Communications Management Unit (or "CMU") in Marion, Illinois, which is where he was when he commenced this action.  *See* Pl's Comp. ¶¶ 2, 5.  BOP received seven FOIA requests from Plaintiff and assigned them Request Nos. (1) 2020-03698, (2) 2020-03478, (3) 2020-04088, (4) 2021-00836, (5) 2021-03892, and (6) 2021-05971.  *See* Christenson Decl. ¶ 10.[1]

In Request No. 2020-03698, Plaintiff requested "every email, note, letter, memorandum, and or other investigative material sent by [Special Investigative Service employee][2] J. Parker . . . about [Plaintiff], wherein his name and/or [R]egister [N]um[ber] 60875-298 . . . from the time I arrived at [the Detention Center] . . . until I left."  Christenson Decl. ¶ 11; Pl's Comp. ¶ 6.[3]

---

[1]    One request, No. 2022-03572, is not at issue in this litigation.  Christenson Decl. at 4 n2.

[2]    Every BOP institution maintains a Special Investigative Service Department ("Special Investigative Department").  All Special Investigative Departments, including the Brooklyn Detention Center's Special Investigative Department, is tasked with conducting investigations into inmate misconduct and criminal activity, staff misconduct and/or criminal activity, institutional crime scene management and evidence recovery, and coordination of criminal investigations with the FBI, Office of Inspector General or any other law enforcement agency and prosecuting United States Attorneys' Offices.  *See* Christenson Decl. ¶ 13.

[3]    In his Complaint, Plaintiff refers to Request No. 2020-3478 twice.  *See* Pl's Comp. ¶ 6.  The first reference is incorrect because he is actually referring to Request No 2020-03698.  *See* Christenson Decl. at 13 n4.  The second reference is accurate.  What Plaintiff erroneously refers to as Request No. 2020-03698 appears to be Request No. 2021-5971.

Defendant issued an initial response and release and supplemented it during this litigation by unredacting various material that previously had been withheld. *See* Christenson Decl. ¶ 15. Specifically, "[b]y letter dated March 11, 2024, BOP released 7 pages of records in full, 60 pages of records in part, and 2 pages were withheld in their entirety." *Id*. ¶ 16.[4]

In Request No. 2020-3478, Plaintiff requested "[a] copy of all referral documentation, including all notes, memoranda, email and other Investigative material . . . used to Approve [his] transfer to the" Communications Management Unit. *Id*. ¶ 36. The Counter Terrorism Unit (or "CTU"), which manages the Communications Management Unit, provided eight pages of responsive records pertaining to the referral of Plaintiff for placement in the Communications Management Unit and released two pages of records in full and six pages of records in part, with no pages withheld in full. *See id*. ¶¶ 39-40.

Request No. 2020-04088 was an aggregated two-part request for "[a] copy of [Plaintiff's] . . . CTU[/CMU] . . . excluding copies of emails (incoming and outgoing) and letters [Plaintiff has] sent/have received while being in the" Communications Management Unit and "[a] copy of any complaints filed against SIS Parker . . . by any inmates alleging staff misconduct and harassment by Parker, and copies of all reports about the outcome of such complaints." Christenson Decl. ¶ 58. Defendant's search returned forty-seven pages of responsive records, twenty-two of which were released in full, seven pages in part, and eighteen pages were withheld in full. *See id*. ¶¶ 62-63. Plaintiff's eighteen-page Presentence Investigation Report and the Statement of Reasons ("Presentence Report") from his Judgment and Commitment were withheld in full, as BOP no longer considers them to be agency records. Christenson Decl. at 22 n5. Presentence Reports are

---

[4]    With its supplemental release, BOP released two additional pages in full; BOP earlier had released five pages of records in full, sixty-two pages of records in part, and two pages were withheld in their entirety. *See* Christenson Decl. ¶ 15.

under the direct control of the court of jurisdiction. *Id*.

FOIA Request No. 2021-00836 was for "a copy of all emails, sent or received through [Trust Fund Limited Inmate Computer System ("TRULINCS")], to or from" five distinct email addresses and individuals. Christenson Decl. ¶ 82. The BOP's Office of Information Technology and Data Division conducted a search that returned 198 pages of responsive records, all of which were released in part; no pages were released in full and no pages were withheld in full. *See id*. ¶¶ 85-86. *Id*.

Request No. 2021-03892 was a five-part request for (1) a copy of Plaintiff's entire Special Investigative Service file; (2) a copy of his entire Special Investigative Department file that was created at the Detention Center, including all reports generated by Officer Parker while Plaintiff was at the Detention Center; (3) a copy of any complaints filed against Officer Parker by any inmate alleging staff misconduct or harassment by Officer Parker, as well as copies of all such reports and their outcome; (4) a copy of all "Summary Reports," "Daily Sensitive Information Reports," and "Daily Lieutenants Logs" filed by all correctional services staff from January 1, 2019 until the date of the request; (5) a copy of Plaintiff's Counter Terrorism Unit "Profile and Assessment" form, created by any member of the Counter Terrorism Unit or any Intelligence Analyst assigned to monitor Plaintiff's communications while at the Communications Management Unit. *See id*. ¶ 94. BOP's search for records for all five parts of this request returned 241 pages of records, of which 63 pages were released in full, 129 pages were released in part, and 49 pages were withheld in full. Subsequently, during the course of this litigation, upon further review of Plaintiff's request, an additional 3716 pages of Daily Lieutenant Logs only from January 1, 2019, through the date of the request were released to the Plaintiff, 1,391 pages of which were released in full and 2,325 pages were released in part. *See id*. ¶ 101-03.

Finally, Request No. 2021-05971 sought a copy of all "Confiscation and Disposition of Contraband," concerning Plaintiff maintained in any logbook at the Detention Center while he was there on his first stint or in his central file regarding his glasses that allegedly were confiscated by Officer Parker. *See id*. ¶ 124.  A search for this request yielded no responsive records. *Id*. ¶ 127.

## STANDARD OF REVIEW

### I.    General Summary Judgment Standard

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation. *Id.* at 247.  "The burden on the moving party may be discharged by 'showing'—that is, pointing out to the [Court]—that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).  In *Celotex Corp. v. Catrett*, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute.  477 U.S. 317, 322-23 (1986).

### II.    Summary Judgment Standard as Applied to FOIA Cases

FOIA cases are appropriately resolved at summary judgment. *See Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to *de novo* review by the Courts. *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1384 (D.C. Cir. 1979).  In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and, if applicable, that each document that falls within the class requested has been produced, is

unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980).

"Under the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition.  The burden is always on the movant to demonstrate why summary judgment is warranted.  The nonmoving party's failure to oppose summary judgment does not shift that burden.  The District Court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (internal quotations omitted).

An agency may satisfy the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence that show that the documents in question were produced or are exempt from disclosure. *Hayden*, 608 F.2d at 1384; *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1980); *Trans Union LLC v. Fed. Trade Comm'n*, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (summary judgment in FOIA cases may be resolved solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Pub. Citizen, Inc. v. Dep't of State*, 100 F. Supp. 2d 10, 16 (D.D.C. 2000), *aff'd in part, rev'd in part*, 276 F.3d 634 (D.C. Cir. 2002).

## ARGUMENT

### I.    BOP Conducted Adequate Searches For Responsive Records

Because a fundamental principle behind FOIA "is public access to government documents," courts require "agencies to make more than perfunctory searches and, indeed, to

follow through on obvious leads to discover requested documents." *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989)); *Campbell v. Dep't of Just.*, 164 F.3d 20, 27 (D.C. Cir. 1998). Therefore, an agency only "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Id.* (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Oglesby v. United States Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Although there "is no requirement that an agency search every record system," an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68.

To demonstrate that it has performed an adequate search for responsive documents, an agency must submit a reasonably detailed affidavit describing the search. *See Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). An affidavit is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68; *see also Defs. of Wildlife*, 623 F. Supp. 2d at 92 (finding declaration deficient where it failed to detail the types of files searched, the filing methods, and the search terms used). However, agency affidavits that "do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized" are insufficient to support summary judgment. *Weisberg v. Dep't of Just.*, 627 F.2d 365, 371 (D.C. Cir. 1980). Moreover, conclusory assertions about the agency's thoroughness are insufficient. *Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007); *Nat'l Sec. Counselors v. CIA*, 849 F. Supp. 2d 6, 11 (D.D.C. 2012) ("The affidavit must explain the scope and method of the agency's search in a non-conclusory fashion.").

Nevertheless, "[a]gency affidavits are accorded a presumption of good faith," *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197 1200 (D.C. Cir. 1991), which can be rebutted with "evidence of agency bad faith," *Military Audit Project*, 656 F.2d at 738, or when "a review of the record raises substantial doubt" that certain materials were overlooked despite well-defined requests. *Valencia-Lucena*, 180 F.3d at 326 (citing *Founding Church of Scientology, Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1981)); *see also Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1981) ("If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.").

In searching for records requested in FOIA Request No. 2020-03698, i.e., emails and other records or investigative material sent by Officer Parker about Plaintiff where he is referenced by name and/or Register number during his first stint at the Detention Center, it was determined that the reasonable location of responsive records was Detention Center's Special Investigative Department, and a search accordingly was conducted there using the language of the request. *See* Christenson Decl. ¶ 13.  Likewise, Defendant conducted a search of Officer Parker's individual BOP email account, using Plaintiff's name and Register No. and the date range Plaintiff had specified. *See id*. ¶ 18.  Regarding Request No. 2020-03478, because Plaintiff requested records pertaining to his referral and placement in the Communications Management Unit, the actual request was sent to the Counter Terrorism Unit as the manager of the Communications Management Unit, and a search was conducted using terms from Plaintiff's request. *See id*. ¶ 41.

Plaintiff's dual submission in Request No. 2020-04088 also implicated the Communications Management Unit because he requested his Communications Management Unit file, so BOP conducted another search using the above parameters, i.e., the language of the request. *See* Christenson Decl. ¶ 61.  It was determined that the Counter Terrorism Unit would be the

appropriate place to search for responsive records, as Plaintiff specifically requested a copy of his Communications Management Unit file, which is most likely to be maintained there, if it exists. The second part of the dual request was for any misconduct or harassment complaints by any inmates at the Detention Center against Officer Parker, as well as any finalized reports of same. *Id*.  This request is identical to the third part of Request No. 2021-03892.  *See id*. ¶ 94.3.  For these two requests, the Detention Center was tasked to search for responsive records.  *See id*. ¶ 97.  This is because the requests specifically sought records that, if they existed, would have been created and maintained at the Detention Center.  *Id*.  For Plaintiff's Request No. 2021-0836, which sought emails that Plaintiff sent to and received from five specifically designated email addresses using TRULINCS, the search was conducted by Office of Information Technology and Data Division staff.  *Id*. ¶ 87.  Because, however, "inmate emails on TRULINCS that are 'older than 180 days are automatically purged from the system,'" *id*. ¶ 87, Plaintiff received 198 pages listing senders' and receivers' emails and timestamps, but "the records do not contain the contents of the emails as that information has been purged."  *Id*.

As for Request No. 2021-03892, which encompassed five different requests folded into a single request, three of the requests sought Communications Management Unit records, while the other two sought Detention Center records.  *See* Christenson Decl. ¶ 94.  One of these requests, for records related to complaints against Officer Parker, was identical to a part of Request No. 2020-04088 and, as described above, was handled by the Detention Center, along with his request for the Detention Center's "Daily Lieutenant Logs."  *Id*. ¶ 97.  Because the other three requests purportedly pertained to Plaintiff's Special Investigative Department and Communications Management Unit files, Defendant searched Plaintiff's Inmate Central Files, as that is where such files would be maintained.  *Id*.  Furthermore, Plaintiff's Inmate Central Files at both USP Marion

and USP Pekin were searched because he was housed at these facilities when the requests were sent. *See id.*

Finally, regarding Request No. 2021-05971 for records about confiscation of Plaintiff's contraband while at the Detention Center, a search for records was conducted there, but a search was also conducted at USP Marion.  Neither yielded any responsive records. *See id.* ¶ 127.

Plaintiff cannot raise a genuine issue of material fact as to any of these searches. Specifically, as for Defendant's search for records pertaining to Request No. 2020-03698 and its request for a particular employee's email about Plaintiff while he was at the Detention Center, it was reasonable to search that employee's emails using Plaintiff's identifiers. *See Machado Amadis v. Dep't of State*, 971 F.3d 364, 369 (D.C. Cir. 2020) (it is "reasonable for the agency to conduct a search that tracked how its own records are organized, just as it surely would be reasonable for [a] clerk to search by a docket number to locate all court records from a particular case"); *see also Ramdeo v. Dep't of Just.*, Civ. No. 19-1114 (ABJ), 2020 U.S. Dist. LEXIS 51535 * (D.D.C. Mar. 25, 2020) (granting summary judgment on search adequacy because BOP identified the correct "location likely to have responsive records" and conducted a search using the "plaintiff's name and inmate register number").[5]  Nor is there a genuine issue of material fact regarding Request No. 2020-04088, which is the request for Plaintiff's Communications Management Unit records, because a search that returned responsive records was conducted in that unit. *See Petrucelli v. Dep't of Just.*, 453 F. Supp. 3d 126, 146 (D.D.C. 2020) (granting summary judgment because "BOP ultimately searched plaintiff's Central File 'for records concerning 'the name John

---

[5]     Defendant applied the same methodology to search for records responsive to Plaintiff's other requests for Detention Center records.  For example, Request No. 2021-03892 is Plaintiff's five-part request for records, two parts of which sought Detention Center records.  Summary judgment would be appropriate for those searches also, given that Defendant used the same methodology. *See* Christenson Decl. ¶ 97.

Petrucelli.'").[6]  Indeed, "[a]n Inmate Central File contains, among other things, an inmate's[] custody classification form, and his security designation form [] Custody classification is the review process to assign a custody level based on an inmate's criminal history, instant offense, and institutional adjustment." *Jennings v. Fed. Bureau of Prisons*, 657 F. Supp. 2d 65, 67 (D.D.C. 2009) (citing BOP Program Statements 5800.11, 5100.08)).

Regarding Request No. 2021-00836, summary judgment is warranted because "emails on TRULINCS that are 'older than 180 days are automatically purged from the system.'"  Christenson Decl. ¶ 87 (citing BOP Program Statement 4500.12, p. 137, ¶ j(1)).;  *see Akel v. Dep't of Just*., Civ. A. No. 20-3240 (RDM), 2023 U.S. Dist. LEXIS 47765 * (D.D.C. Mar. 21, 2023) (granting summary judgment because "[a]t this point, there is nothing left for the Court to order the Department to do regarding Swaim's [purged] emails.").  "The [FOIA] does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 152 (1980).  Thus, because Defendant has fulfilled its FOIA obligations with regard to this request, summary judgment is likewise warranted here.

"The touchstone when evaluating the adequacy of an agency's search for records in response to a FOIA request is reasonableness, and in particular, whether the agency made 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'"  *Muckrock, LLC v. CIA*, 300 F. Supp.3 d 108,

---

[6]     Three of the categories of records associated with Request No. 2021-03892 were for Communications Management Unit records.  *See* Christenson Decl. ¶ 97 ("USP Marion was also requested to search for records responsive to [the Communications Management Unit request] because the request specifically mentioned USP Marion as the location of the [Communications Management Unit] where [Plaintiff] was housed and it was determined that he was seeking records pertaining to the monitoring of his communications at USP Marion.").  Thus, summary judgment is also warranted as to that request.

125 (D.D.C. 2018) (quoting *Oglesby*, 920 F.2d at 68); *see Physicians for Human Rights v. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009) ("as long as this standard is met a court need not quibble over every perceived inadequacy in an agency's response, however slight").  Defendant's declaration, which is accorded the presumption of good faith, details BOP's search and thereby explains the manner and reasons for the searches it conducted.

These efforts were unquestionably diligent and reasonable.  *See Canning v. Dep't of Just.*, 848 F. Supp. 1037, 1051 (upholding adequacy of search after FBI examined its Central Records System, General, and Electronic Surveillance indices).  Further, Christenson repeatedly attests that searches were conducted in the locations most likely to yield responsive records.  *See generally* Christenson Decl.; *see also Debrew v. Atwood*, 244 F. Supp. 3d 123, 129-30 (D.D.C. 2015) (granting summary judgment because "the BOP's interpretation of plaintiff's FOIA request for records . . . was reasonable" and searches were conducted in "locations [that] are the most likely places to have found responsive records."); *Berard v. Fed. Bureau of Prisons*, 209 F. Supp. 3d 167, 173 (D.D.C. 2016) ("Accordingly, the Court finds that BOP performed a reasonable search, located the requested document, and produced the requested document to Plaintiff, albeit in redacted form.").  Thus, for the foregoing reasons, Defendant is entitled to summary judgment as to its search efforts.

## II.     Justification for Withholdings Under FOIA Exemptions

Having established that it conducted an adequate search, the BOP also is entitled to judgment as a matter of law because the facts are undisputed that it properly withheld records under Exemptions 5, 6, 7(C), 7(E), and 7(F).  Generally, across the various requests, Defendant withheld under Exemption 5 recommendations about how to manage and house Plaintiff that were not final; under Exemptions 6 and 7(C), the names of third-parties and other inmates' registration

numbers who provided input and/or recommendations regarding Plaintiff's inappropriate conduct; under Exemption 7(E), inmate monitoring, classification, and management techniques and determinations; and under Exemption 7(F), information that could reasonably be expected to endanger the life or physical safety of staff, inmates, and the general public, as well as the physical security of the institution. *See generally* Christenson Decl.

## A. The BOP withheld Records under the Deliberative Process Privilege

Under Exemption 5, agencies may withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 incorporates the privileges that the Government may claim when litigating against a private party, including the deliberative process privilege. *See Baker & Hostetler LLP v. Dep't of Com.*, 473 F.3d 312, 321 (D.C. Cir. 2006). The exemption covers records that would be "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

The deliberative process privilege protects "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Sears, Roebuck & Co.*, 421 U.S. at 150 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)). It also protects other subjective information reflecting the author's personal opinions prior to agency adoption of a policy. *Judicial Watch, Inc. v. Dep't of Just.*, 306 F Supp.2d 58, 70 (D.D.C. 2004) (handwritten notes that a member of the Attorney General's staff made on an invitation were exempt from disclosure because they would reveal the factor that the staff member considered important, and how the decision to attend the event may have been reached); *Tax Analysts v. IRS*, 294 F.3d 71, 80 (D.C. Cir. 2002) (affirming withholding of five Technical Assistance memoranda). Disclosing such documents could inhibit

agency employees' "frank discussion of legal or policy matters," thus leading to weaker decisions and policies. *Sears*, 421 U.S. at 150; *see also EPA v. Mink*, 410 U.S. 73, 87 (1973); *Tax Analysts*, 294 F.3d at 80.  In determining whether the deliberative process privilege protects information, the record or portion of a record must be both predecisional and deliberative in nature. *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).

In enacting Exemption 5, Congress determined that the disclosure of material that is predecisional and deliberative harms an agency's decisionmaking process.  *See McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011).  In a FOIA case, the court's role "is not to second-guess that Congressional judgment on a case-by-case basis." *Id.*  Rather, "[t]here should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take – of the deliberative process – by which the decision itself is made.'" *Chemical Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Vaughn v. Rosen*, 523 F.2d at 1144).  The agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions.'" *Id.* (quoting *Sears*, 421 U.S. at 151).

Exemption 5 is most often invoked for documents authored by officers or employees of a U.S. government "agency."  *Klamath Water*, 532 U.S. at 8.  Under FOIA, the term "agency" is defined to mean, with certain exceptions not relevant here, "each authority of the Government of the United States."  5 U.S.C. §§ 551(1), 552(f)(1).  As Congress defined "agency" to include only authorities of the U.S. Government, "intra-agency" and "inter-agency" are ordinarily read to refer only to documents created by officers or employees within the U.S. Government. *Pub. Emps. for Env't Resp. ("PEER") v. U.S. Section Int'l Water & Boundary Comm'n*, 740 F.3d 195, 201 (D.C. Cir. 2014).  In the course of its day-to-day activities, an agency often needs to rely on the opinions

and recommendations of its employees that are an integral part of its deliberative process; to conduct this process in public view would inhibit frank discussion of policy matters and likely impair the quality of decisions. *Ryan v. Dep't of Just.*, 617 F.2d 781, 789 (D.C. Cir. 1980).

Notes generally are selective and deliberative, and routine public disclosure of meeting notes and other notes would hinder government officials from debating issues internally, deter them from giving candid advice, and lower the overall quality of the government decision making process. *See, e.g., Jud. Watch, Inc. v. Clinton*, 880 F. Supp. 1, 13 (D.D.C. 1995) ("Disclosure of this type of deliberative material inhibits open debate and discussion, and has a chilling effect on the free exchange of ideas."), *aff'd*, 76 F.3d 1252 (D.C. Cir. 1996); *cf. Bureau of Nat'l Affs., Inc. v. Dep't of Just.*, 742 F.2d 1484, 1494 (D.C. Cir. 1984) (recognizing possibility that notes might be withheld under Exemption 5 because of "the potential chilling effect that disclosure of handwritten notes might have on the activities of government employees"). Release of the records withheld here, either in full or in part, under Exemption 5 and the deliberative process privilege would cause "foreseeable harm" to the agency interests protected by the FOIA exemptions. *See Ctr. for Investigative Reporting v. Customs & Border Patrol*, 436 F. Supp. 3d 106 (D.D.C. 2019).

To carry its burden at summary judgment, the BOP must demonstrate that (a) the materials at issue are covered by the deliberative process privilege, and (b) it is reasonably foreseeable that release of those materials would cause harm to an interest protected by that privilege. *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (agency affidavit stating that disclosure of withheld information "would discourage line attorneys from candidly discussing their ideas, strategies, and recommendations, thus impairing the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals" was sufficient to make the agency's foreseeable harm showing under the deliberative process privilege); *see also* 5 U.S.C.

§ 552(a)(8)(A)(i)(I).   Moreover, even without a sufficient explanation from the agency, the "context and purpose" of withheld information can support a finding of foreseeable harm.  *See Reps. Comm. for Freedom of Press v. FBI*, 3 F.4th 350, 359 (D.C. Cir. 2021).

Here, across the various requests, BOP withheld non-final information about staffs' discussions, proposals, and recommendations on possible management and placement of inmates, including Plaintiff himself.[7]  The information is properly protected under Exemption 5 because, first, it qualifies as an inter-agency memorandum because its source is the BOP – a Government agency.  *See Duffin v. Carlson*, 636 F.2d 709, 713 (D.C. Cir. 1980).  The records are also deliberative because they are staff memoranda regarding discussions about security and policy, as well as appropriate course of action that would, if disclosed, inhibit the open and frank communications between government employees.  *See* Christenson Decl. ¶¶ 23-24; ¶¶ 46-47.  This information was properly withheld under Exemption 5.  *Antonelli v. Fed. Bureau of Prisons*, 623 F. Supp. 2d 55, 58 (D.D.C. 2009) (granting summary judgement on deliberative process grounds because the records were "staff memorand[a] contained security and policy related issues"); *see also Heartland All. for Hum. Needs & Hum. Rts. v. Immigr. & Customs Enf't*, 406 F. Supp. 3d 90, 121-22 (D.D.C. 2019) (intra-agency draft of an operational plan covered by the deliberative process privilege); *KDKA-TV v. Thornburgh*, Civ. No. 90-1536 (TFH), 1992 U.S. Dist. LEXIS 22438 *11 (D.D.C. Sept. 30, 1992) (agency safety recommendations and internal memoranda were protected under Exemption 5).

Under the FOIA Improvement Act of 2016, agencies must release a record, even if it falls within a FOIA exemption, unless "the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law." 5 U.S.C.

---

[7]     Exemption 5 was not invoked as to Request Nos. 2021-00836 and 2021-05971.

§ 552(a)(8)(A)(i).  To satisfy its burden, "an agency must identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials and connect the harms in a meaningful way to the information withheld." *Rosenberg v. Dep't of Def.*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020).  In this case, release of the material withheld under Exemption 5 would foreseeably harm the BOP by chilling candid written deliberations about inmate safety, and, more particularly, by providing inmates with a roadmap about how to engage in disruptive behavior while avoiding placement and management decisions. *See* Christenson Decl. ¶ 47.  Such disruptive inmate behaviors jeopardize the safety and security of all staff, inmates, and the community alike.  *See id.*  Both the foreseeable harms to inmate safety as well as BOP's interest in appropriate inmate management and classifications are sufficient to satisfy the foreseeable harm requirement.  *See PEER v. EPA*, Civ. No. 18-2219 (BAH), 2021 U.S. Dist. LEXIS 114123, at *53 (D.D.C. Jun. 18, 2021) (agency identified two foreseeable harms to the deliberative process privilege in chilling of agency deliberations and public confusion and adequately linked those harms to disclosure of the information at issue).  Likewise, institutional safety alone would be sufficient to satisfy the "context and purpose" requirement to justify non-disclosure.

**B.     BOP withheld Individuals' Personal Information under Exemptions 6 and 7(C)**

The records that the BOP has withheld under Exemptions 6 and 7(C) are law enforcement records containing information about the names of lower-level BOP staff who provided input and/or recommendations regarding Plaintiff's and other inmates' inappropriate conduct and other third parties who provided Plaintiff property during a visit.  *See generally* Christenson Decl. ¶ 26. Importantly, Plaintiff did not offer authorizations to release information from any of the third parties identified in the records.  *Id.*

Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

For Exemption 6 to apply, the information at issue must be maintained in a government file and "appl[y] to a particular individual."  *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982).  Once this threshold is met, Exemption 6 requires the agency to balance the individual's right to privacy against the public interest in disclosure. *See Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976); *Reed v. Nat'l Lab. Rels. Bd.*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).  "[T]he privacy inquiry of Exemptions 6 and 7(C) [is] essentially the same," although Exemption 7(C) sets a lower invasion threshold to justify withholding.  *Just. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1125 (D.C. Cir. 2004).  Thus, Exemption 7(C) embodies heightened privacy protections. *See Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989); *Nat'l Archives & Rec. Admin. v. Favish*, 541 U.S. 157, 165-66 (2004).  In light of the related nature of the inquiries under Exemptions 6 and 7(C), Defendant mostly applied the exemptions here jointly and defends them as such.

Courts have narrowly construed the public interest in disclosure of information.  The "only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is contribut[ing] significantly to public understanding of the operations or activities of the government.'"  *Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994) (quoting *Reporters Comm.*, 489 U.S. at 775).  Plaintiff

bears the burden of demonstrating that the release of the withheld information would serve this interest. *See Carter v. Dep't of Com.*, 830 F.2d 388, 391-92, nn.8, 13 (D.C. Cir. 1987).

Here, BOP withheld the names of lower-level BOP staff who provided input and/or recommendations regarding Plaintiff's and other inmates' inappropriate conduct, as well as third parties who provided Plaintiff property during a visit, *see generally* Christenson Decl. ¶ 26; the names and statements in records pertaining to Plaintiff's property, statements made by third party inmates in records pertaining to Plaintiff's activities, and the identities of lower-level staff members providing recommendations regarding Plaintiff's future housing and classification, *id*. ¶ 33; names, signatures, personal identifying information, information about correctional management of third-party inmates for whom privacy waivers were not provided; the names (and confidential login IDs) of low-level BOP staff; and direct-access phone extension numbers and email addresses of prison employees, *id*. ¶ 55; *see also* ¶¶ 71, 78.

The third-party individuals' information is undoubtedly contained in law enforcement records for Exemption 7(C) purposes.  BOP is a law enforcement agency and thus deserves deference on this issue. *See Duffin*, 636 F.2d at 713; *see also* Christenson Decl. ¶ 73.  The term "law enforcement officer" is defined as "an employee of the Bureau of Prisons or Federal Prison Industries, Inc."  5 U.S.C. § 8401(17)(D)(i).  Further, BOP employees perform law enforcement functions, such as making arrests, 18 U.S.C. § 3015; seizing evidence, 18 U.S.C. § 4012; and executing searches on inmates and visitors to the institution, 28 C.F.R. §§ 511.10-511.12, 552.10-552.14.  Further, BOP is tasked with the law enforcement mission of protecting inmates, staff, and the community.  *See* 18 U.S.C. § 4042(a)(1)-(3) ("The Bureau of Prisons, under the direction of the Attorney General, shall (1) have charge of the management and regulation of all Federal penal and correctional institutions; (2) provide suitable quarters and provide for the safekeeping, care,

and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise; (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States.").

Release of these individuals' information would constitute an unwarranted invasion of their personal privacy and could reasonably be expected to expose them to unwanted harassment or even retaliation.  *See* Christenson Decl. ¶ 26; *see also id.* ¶ 33 ("Release of this information would constitute an unwarranted invasion into their personal privacy and risks exposing the third-party staff causing irreparable damage to reputations, embarrassment, harassment, threats of reprisal, comment, speculation, and stigma.").  Courts consistently have found that the individuals whose information Defendant seeks to protect here have substantial privacy interests, and when, as here, a plaintiff fails to establish an overriding public interest in disclosure of such individuals' identities, courts have without difficulty protected their identities from public disclosure because "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation."  *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990); *see also Lesar v. Dep't of Just.*, 636 F.2d 472, 488 (D.C. Cir. 1980); *Davis v. Dep't of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992); *Fischer v. Dep't of Just.*, 596 F. Supp. 2d 34, 47 (D.D.C. 2009); *Keys v. Dep't of Homeland Sec.*, 510 F. Supp. 2d 121, 128 (D.D.C. 2007); *Ray v. FBI*, 441 F. Supp.2d 27, 34-35 (D.D.C. 2006); *Truesdale v. Dep't of Just.*, 2005 WL 3294004, at *6 (D.D.C. Dec. 5, 2005); *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (explaining that "subjects, witnesses, or informants in law enforcement investigations" are protected under 7(C) (citing *SafeCard Servs.*, 926 F.2d at 1197)); *Schrecker v. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003) ("This Circuit has consistently held that where a FOIA request for law enforcement records invokes the privacy interests of any third party mentioned in those

records (including investigators, suspects, witnesses and informants) the exemption applies, unless there is an overriding public interest in disclosure").

Agencies are permitted "to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'"  *Schrecker*, 349 F.3d at 661 (quoting *SafeCard Servs*., 926 F.2d at 1206); *see also McGehee v. Dep't of Just.*, 800 F. Supp. 2d 220, 233-34 (D.D.C. 2001) (upholding 7(C) withholdings for "Third Parties Merely Mentioned," "Third Parties who Provided Information," "Third Parties of Investigative Interest," and "Victims and Survivors").  BOP assessed that Plaintiff failed to identify a countervailing public interest that outweighs these third-party individuals' strong privacy interests, and disclosure of the protected information does not serve the public interest or provide further meaningful insight into BOP's activities.  *See* Christenson Decl. ¶ 71.  If there is no public interest in the disclosure of certain information, "something, even a modest privacy interest, outweighs nothing every time."  *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

Because BOP identified third party individuals' personal information that, if released, would cause harm to them, and BOP properly assessed that Plaintiff had not raised any public interest at all, let alone one that would outweigh the privacy interests, the BOP properly withheld third parties' information under Exemptions 6 and 7(C).

### C.    **BOP Appropriately Invoked a *Glomar* Response Under Exemption 7(C)**

BOP appropriately offered a Glomar response to Plaintiff's request for information about investigations into Parker.   In Request No. 2020-04088, Plaintiff sought "[a] copy of any complaints filed against J. Parker, Special Investigative Supervisor-MDC- Brooklyn, NY., by any inmates alleging staff misconduct and harassment by Parker, and copies of all reports about the

outcome of such complaints."   Christenson Decl. ¶ 61.   Insofar as Plaintiff's request seeks investigatory type records related to an individual, the BOP appropriately refused to confirm or deny the existence of such records.   This type of response—refusing to confirm or deny the existence of responsive records—is commonly referred to as the "*Glomar"* response.[8]

"In certain cases, merely acknowledging the existence of responsive records would itself 'cause harm cognizable under [a] FOIA exception.'" *PETA v. Nat'l Inst. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).   "In that event, an agency can issue a *Glomar* response, refusing to confirm or deny its possession of responsive records." *Id.*; *see also* Exec. Order No. 13526, § 3.6(a) 75 Fed. Reg. 707, 719 (Dec. 29, 2009) (expressly providing that "[a]n agency may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors").

To justify a *Glomar* response, "[t]he agency must demonstrate that acknowledging the mere existence of responsive records would disclose exempt information." *Elec. Privacy Info. Ctr. v. Nat'l Sec. Ag.*, 678 F.3d 926, 931 (D.C. Cir. 2012) (citing *Wolf*, 473 F.3d at 374); *see also Knight First Am. Inst. at Columbia Univ. v. CIA*, 11 F.4th 810, 818 (D.C. Cir. 2021) (upholding *Glomar* response regarding the murder of Saudi Arabian journalist Jamal Khashoggi under Exemption 1 because "revealing whether responsive documents exist would 'reasonably be expected to result in at least serious damage to national security.'").

As with more typical FOIA cases, "[c]ourts can grant summary judgment upholding a *Glomar* response based on agency affidavits explaining the basis for the response." *PETA*,

---

[8]         This term is derived from *Phillippi v. CIA,* 546. F.2d 1009 (D.C. Cir. 1976), which upheld the use of the "neither confirm nor deny" response to a FOIA request for records concerning reported contacts with the media about Howard Hughes's ship, the "Hughes Glomar Explorer."

745 F.3d at 540.  The agency's burden is not demanding: "'[u]ltimately, an agency's justification for invoking a FOIA exemption,' whether directly or in the form of a *Glomar* response, 'is sufficient if it appears logical or plausible.'" *ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013) (quoting *Wolf*, 473 F.3d at 374-75; additional citations omitted).  Agencies cannot pick and choose whether to confirm the existence of responsive records and confine their *Glomar* responses to cases where responsive records exist.  To the contrary, they must also issue *Glomar* responses in cases where no responsive records exist because otherwise the *Glomar* response would effectively signal confirmation that no responsive records exist, and *Glomar* would lose its value as this became apparent over time.  *See Knight First Amendment Inst.*, 11 F.4th at 818.

Here, the BOP invoked *Glomar* because Plaintiff sought "investigatory records pertaining to third party individuals, whether or not there are, in fact, any responsive records."  Christenson Decl. ¶ 68.  Consistent with the third parties' privacy harm considerations discussed above, BOP regularly asserts Exemption 7(C) *Glomar* responses as to requests or portions of requests that seek unacknowledged investigatory records pertaining to third parties.  *See id.* ¶ 79.  Specifically, BOP determined that the targeted third party has a substantial privacy interest in not having the fact disclosed of whether or not investigatory records exist because neither has the targeted third party himself publicly acknowledged being subject to an investigation, nor has the BOP officially acknowledged that the targeted third party is subject to an investigation.  *See id.*

Acknowledging the existence of an investigation into Parker would have violated a privacy interest protected under Exemption 7(C), as well as Exemption 6.  "Exposure of derogatory information relating to a guard in a prison setting could even raise safety and security issues.  Such a privacy interest arises not only with criminal investigations, but also with investigations of professional misconduct."  *Anthony v. Fed. Bureau of Prisons*, Civ. No. 22-1558 (TNM), 2024

U.S. Dist. LEXIS 24704, *9 (D.D.C. Feb. 13, 2024) (citing *Jefferson v. Dep't of Just.*, 284 F.3d 172, 180 (D.C. Cir. 2002)).  Since Plaintiff's FOIA request seeks information that would reveal whether a correctional officer has been investigated for potentially criminal misconduct, BOP has shown that disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy under Exemption 7(C).  *See id.*  "It 'would constitute a clearly unwarranted invasion of personal privacy' under Exemption 6," as well as Exemption 7(C).  *Id.*  Moreover, because Plaintiff has not posited any public interest that would outweigh the privacy interest at stake here, the *Glomar* assertion is appropriate.  *See Mount v. Nielsen*, Civ. No. 16-2532 (CRC), 2018 U.S. Dist. LEXIS 18310, *5 (because "the public interest is not strong enough to justify the privacy invasion[,] [t]he Department's *Glomar* response is [] proper.").

> **D.    BOP Properly Withheld Law Enforcement Information Under Exemption 7(E)**

Exemption 7(E) was applied to withhold information from internal intelligence-gathering systems and investigation techniques that ferret out misconduct, *see generally* Christenson Decl. ¶¶ 34-36, as well as documents containing information supporting decisions made regarding Plaintiff's future housing placements, *id.* ¶¶ 57-58; ¶¶ 80-81; ¶¶ 120-122.

Exemption 7(E) protects law enforcement records or information when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see also Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009) ("the importance of deterrence explains why the exemption is written in broad and general terms" and further explains why the exemption looks "not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk").

The D.C. Circuit has "set[] a relatively low bar for the agency to justify withholding" under FOIA Exemption 7(E). *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). Such information may be withheld "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Mayer Brown*, 562 F.3d at 1193. Moreover, "[t]he first clause of Exemption 7(E) affords 'categorical' protection for 'techniques and procedures' used in law enforcement investigations or prosecutions," *McRae v. Dep't of Just.*, 869 F. Supp. 2d 151, 168 (D.D.C. 2012) (citing *PEER v. U.S. Sect. Int'l Boundary & Water Comm'n*, 839 F. Supp. 2d 304, 327 (D.D.C. 2012)); whereas the second clause "separately protects 'guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law.'" *Id.*[9] Further, "[t]he government must show that the records contain law-enforcement techniques and procedures that are generally unknown to the public." *Elkins v. FAA*, 134 F. Supp. 3d 1, 4 (D.D.C. 2015) (quoting *Am. Immigr. Council v. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 245 (D.D.C. 2013)).

---

[9]     Some courts have held that a risk of circumvention of the law is only required for guidelines for investigations, making techniques and procedures categorically exempt under 7(E). *See, e.g., McRae*, 869 F. Supp. 2d at 168-69. Other courts have held that a showing of risk of circumvention of the law is required for both types of records. *See, e.g., Muslim Advocates v. Dep't of Just.*, 833 F. Supp. 2d 106, 108-09 (D.D.C. 2012). The D.C. Circuit has not resolved this discrepancy. *See Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 746 F.3d 1082, 1102 (D.C. Cir. 2014). Even if a showing that "disclosure could reasonably be expected to risk circumvention of the law" were required to protect these "techniques and procedures" from disclosure, the "risk circumvention of the law" requirement presents a "low bar." *See PEER*, 740 F.3d at 204 n.4 ("it is not clear" that the issue of whether an agency needs to show that disclosure of a technique or procedure could reasonably be expected to risk circumvention of the law "matters much in practice" given the "low bar" for the circumvention requirement). In any event, all the Exemption 7(E) withholdings at issue here satisfy even this standard, whether it applies or not.

Here, the BOP specifically withheld information about "inmate monitoring, classification, and management techniques and determinations regarding inmates, including the information relied upon to make those determinations."  Christenson Decl. ¶ 36 (citing 28 C.F.R. § 524.72(f) (concerning the separation of inmates and Central Inmate Monitoring)).  This is "sensitive internal monitoring programs utilized to keep prison populations balanced and to ensure inmates who require separation from each other based on safety and security concerns actually remain separate." *Id*.  "Disclosure of these records would enable inmates to circumvent and/or nullify the effectiveness of these monitoring procedures."  *Id*.  BOP also withheld classification and monitoring assignments that it uses "to identify inmates who have a verified need for enhanced monitoring or protection from other inmates for various reasons, including gang/disruptive group affiliations, cooperation issues, etc."  Christenson Decl. ¶ 58.  The BOP will use an inmate's assignments to develop specific procedures for managing the inmate and these measures are not known to the inmates or the public.  *Id*.

The BOP's justifications for withholding this information are sufficient.  "The requirement that records 'would disclose techniques and procedures for law enforcement investigations or prosecutions' . . . is met, *inter alia*, where a record would disclose details about a law enforcement technique or procedure itself or would disclose information regarding 'when . . . agencies are likely to employ' certain techniques or procedures[.]" *Sheridan v. Off. of Personnel Mgmt*., 278 F. Supp. 3d 11, 19 (D.D.C. 2017) (citing *Sack v. Dep't of Def.*, 823 F.3d 687, 694 (D.C. Cir. 2016) and *Blackwell*, 646 F.3d at 42).  BOP "monitors and controls the transfer, temporary release and community activities of inmates who present special needs for management."  28 C.F.R. § 524.70. Inmates like Plaintiff are Central Inmate Monitoring cases that require a higher level of review "to

protect staff, inmates and the general public, and to contribute to the safe and orderly operation of all federal institutions."  Christenson Decl. ¶ 81.

"Inmates [like Plaintiff] who receive a CIM assignment are advised of their broad assignment but are not provided information concerning the specific assignment.  The other internal assignments for classification and monitoring used by the BOP are not disclosed to inmates."  *Id*.  The indisputable facts here demonstrate that the BOP's reliance on Exemption 7(E) to protect the withheld classification information is well-founded.  *See Allen v. Dep't of Just.*, Civ. No. 17-1197 (CKK), 2020 U.S. Dist. LEXIS 14572, *28 (D.D.C. Jan. 29, 2020) (granting summary judgment under Exemption 7(E) where the BOP's declaration sufficiently demonstrated that disclosure of plaintiff's classification and assignment would reveal "the techniques and procedures . . . use[d] to monitor inmates," which "[p]laintiff or other inmates could reasonably be expected to use to circumvent the law"); *see also Pinson v. Dep't of Just.*, 313 F. Supp. 3d 88 (D.D.C. 2018) (information that would provide inmates insights into institutional management and safety is properly withheld especially where disclosure would "allowing circumvention and render[] the procedures ineffective"); *Ramdeo v. Dep't of Just.*, Civ. No. 19-0111, 2020 U.S. Dist. LEXIS 51535, *21 (D.D.C. Mar. 25, 2020) (information that if disclosed could "warn an inmate about whether he is under investigation, what level of scrutiny is being placed on his communications, and whether past calls were preserved" is protected under Exemption 7(E)).  Because BOP's Exemption 7(E) withholdings are lawful, as demonstrated above, summary judgment is warranted.

   **E.    BOP Properly withheld Law Enforcement Information under Exemption 7(F)**

Similar information about Plaintiff's "monitoring and classification" was also withheld under Exemption 7(F).  Christenson Decl. ¶ 83.  "Disclosure of the monitoring and classification information would enable inmates to evade the monitoring techniques, which in turn could

reasonably be expected to endanger the life or physical safety of staff, inmates, and [the] general public." *Id*. Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "[T]he phrase 'any individual' makes clear that Exemption 7(F) shields the life or physical safety of any person, not only the law enforcement personnel." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 777 F.3d 518, 525 (D.C. Cir. 2015). No balancing of interests is required as would be the case under Exemption 7(C). *See Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 29 (D.D.C. 2002) ("Unlike Exemption 7(C), which involves a balancing of societal and individual privacy interests, [Exemption] 7(F) is an absolute ban against certain information[.]"). "In reviewing claims under exemption 7(F), courts have inquired whether there is some nexus between disclosure and possible harm and whether the deletions were narrowly made to avert the possibility of such harm." *Antonelli*, 623 F. Supp. 2d at 58 (citing *Albuquerque Pub. Co. v. Dep't of Just.*, 726 F. Supp. 851, 858 (D.D.C. 1989)). Courts defers to the agency's assessment of danger. *See Gardels v. CIA*, 689 F.2d 1100, 1104-05 (D.C. Cir. 1982).

This exemption "affords broad protection to the identities of individuals mentioned in law enforcement files," *Jimenez v. FBI*, 938 F. Supp. 21, 30 (D.D.C. 1996), including any individual "reasonably at risk of harm." *Miller v. Dep't of Just.*, 562 F. Supp. 2d 82, 124 (D.D.C. 2008) (quoting *Long v. Dep't of Just.*, 450 F. Supp. 2d 42, 79 (D.D.C. 2006)). Defendant withheld information about its monitoring and classification of the Plaintiff because "disclosure would enable inmates to evade the monitoring techniques, which in turn could reasonably be expected to endanger the life or physical safety of staff, inmates, and general public risking threats to the safety of staff and inmates and the physical security of the institution." Christenson Decl. ¶ 38, 59. This application of Exemption 7(F) to withhold the identified information is appropriate.

**F.**   <u>**Defendant has Released all Reasonably Segregable Information**</u>

Finally, under the FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information subject to FOIA must be disclosed after redaction of the exempt information.  5 U.S.C. § 552(b).  Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions."  *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).   To establish that all reasonably segregable, non-exempt information has been disclosed, an agency must show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated.  *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).   The agency also "must specifically and thoughtfully" consider whether otherwise exempt information can be released without foreseeable harm to the interests protected by the particular exemption invoked.  *Leopold v. Dep't of Just.*, 94 F.4th 33, 37-38 (D.C. Cir. 2024).   Defendants are nevertheless entitled to a presumption that they fulfilled their segregation duty when they so swear, and that presumption can only be overcome by some "quantum of evidence" credibly put forward by the requester.  *Sussman v. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, where BOP withheld information that would reveal how staff proposed to manage and house Plaintiff under Exemption 5, for example, "[e]very effort was made to release all segregable information within these documents."  Christenson Decl. ¶ 24.  It did the same where third party individuals' personal privacy was at stake.  *See id.* ¶¶ 26-31 ("Every effort has been made to release all segregable information without invading the privacy interests of the third-party inmates named in these records.").  BOP made such efforts as to each of the other withholdings, as well.  *See generally id.*  Furthermore, BOP considered whether more could be segregated and

released, but ultimately determined that foreseeable harm precluded releasing anything more, given the important interests at stake.  *Leopold v. Dep't of Just.*, 94 F.4th 33, 37-38 (D.C. Cir. 2024).  It bears emphasis that an agency need not separate disjointed words, phrases, or sentences that would provide minimal informational content, *see Schoenman v. FBI*, 763 F. Supp. 2d 173, 176 (D.D.C. 2011).  In sum, BOP fulfilled its segregability obligations, and BOP is entitled to summary judgment on this issue, as well.

## CONCLUSION

For the foregoing reasons, summary judgment is warranted and the BOP is entitled to judgment as a matter of law on all counts.

Dated: May 14, 2024
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:      *Kenneth Adebonojo*
      KENNETH ADEBONOJO
      Assistant United States Attorney
      601 D Street, NW
      Washington, DC 20530
      (202) 252-2562

*Attorneys for the United States of America*