**VAUGHN INDEX**
**Edgar Veytia v. Federal Bureau of Prisons**
**Civil Action No. 21-CV-1829-ABJ (D.D.C.)**

| FOIA Request No. 2020-03698 | | | | | |
|---|---|---|---|---|---|
| Doc # | Total Pages | Redacted Pages | Document Description | Exemption | Justification |
| 1 | 29 pages | 29 pages withheld in part | Records are the Unit Log Book | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | (1) the 29 pages were withheld in part based on exemptions (b)(6) and (b)(7)(C), which were used to withhold the names of BOP staff member. Disclosure of this information would constitute an unwarranted invasion of personal privacy.<br><br>(2) the 29 pages were withheld in part based on exemptions (b)(7)(E) and (b)(7)(F), which were used to withhold the BOP's techniques and procedures for gathering evidence used for investigative and potential law enforcement purposes, as well as information regarding monitoring and classification of Veytia, the disclosure of which could enable inmates to circumvent, countermeasure, and/or nullify the effectiveness of the BOP's investigative and intelligence processes. Further, disclosure of this information could endanger the life or physical safety of BOP staff or other third parties involved, as inmates or their confederates may seek to retaliate against staff involved in investigation and intelligence operations |
| 2 | 40 pages | 7 pages released in full; 31 pages withheld in part; and 2 pages withheld in full | SIS Investigation, related disciplinary records and administrative remedies regarding alleged extortion of Veytia | (b)(5) (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | (1) 1 of the 40 pages was withheld in part based on exemption (b)(5), which was used to withhold the proposal and recommendation of staff regarding management and housing of Veytia which contained no final determination.<br><br>(2) 31 of the 40 pages were withheld in part and 2 pages of the 40 pages were withheld in full based on exemptions (b)(6) and (b)(7)(C), which were used to withhold the names of BOP staff member. Disclosure of this information would constitute an unwarranted invasion of personal privacy. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | (3) 7 of the 40 pages were withheld in part based on exemption (b)(7)(E), which was used to withhold the BOP's techniques and procedures for gathering evidence used for investigative and potential law enforcement purposes, as well as information regarding monitoring and classification of Veytia, the disclosure of which could enable inmates to circumvent, countermeasure, and/or nullify the effectiveness of the BOP's investigative and intelligence processes.<br><br>(4) 13 of the 40 pages were withheld in part and 1 of the 40 pages was withheld in full based on exemption (b)(7)(F) as adisclosure of this information could endanger the life or physical safety of BOP staff or other third parties involved, as inmates or their confederates may seek to retaliate against staff involved in investigation and intelligence operations. |
| 3 | 27 | 12 pages withheld in part; 3 pages withheld in full; 12 pages were entirely duplicative | Emails sent by SIS staff concerning Veytia | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F | (2) 3 of the 6 pages were withheld in part based on exemptions (b)(6) and (b)(7)(C), which were used to withhold the names of BOP staff member. Disclosure of this information would constitute an unwarranted invasion of personal privacy.<br><br>(3) 2 of the 6 pages were withheld in part based on exemptions (b)(7)(E) and (b)(7)(F), which were used to withhold the BOP's techniques and procedures for gathering evidence used for investigative and potential law enforcement purposes, as well as information regarding monitoring and classification of Veytia, the disclosure of which could enable inmates to circumvent, countermeasure, and/or nullify the effectiveness of the BOP's investigative and intelligence processes. Further, disclosure of this information could endanger the life or physical safety of BOP staff or other third parties involved, as inmates or their confederates may seek to retaliate against staff involved in investigation and intelligence operations |

| FOIA Request No. 2020-03478 | | | | | |
|---|---|---|---|---|---|
| Doc # | Total Pages | Redacted Pages | Document Description | Exemption | Justification |
| 1 | 8 | 2 pages released in full; 6 pages withheld in part. | Records pertaining to referral and placement of Veytia in the Communications Management Unit at USP Marion | (b)(5) (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | (1) 1 of the 6 pages was withheld in part based on exemption (b)(5), which was used to withhold the proposal and recommendation of staff regarding management and housing of Veytia which contained no final determination.<br><br>(2) 3 of the 6 pages were withheld in part based on exemptions (b)(6) and (b)(7)(C), which were used to withhold the names of BOP staff member. Disclosure of this information would constitute an unwarranted invasion of personal privacy.<br><br>(3) 2 of the 6 pages were withheld in part based on exemptions (b)(7)(E) and (b)(7)(F), which were used to withhold the BOP's techniques and procedures for gathering evidence used for investigative and potential law enforcement purposes, as well as information regarding monitoring and classification of Veytia, the disclosure of which could enable inmates to circumvent, countermeasure, and/or nullify the effectiveness of the BOP's investigative and intelligence processes. Further, disclosure of this information could endanger the life or physical safety of BOP staff or other third parties involved, as inmates or their confederates may seek to retaliate against staff involved in investigation and intelligence operations |
| 2 | 363 | 12 pages released in full; 25 pages withheld in part; 308 pages were entirely duplicative; and 18 pages | Emails generated by CTU regarding Veytia's transfer to CMU. | (b)(6) (b)(7)(C) (b)(7)(E) (b)(7)(F) | (1) 24 of the 25 pages were withheld in part based on Exemptions (b)(6) and (b)(7)(C), which were used to withhold the names of BOP staff members. Disclosure of this information would constitute an unwarranted invasion of personal privacy.<br><br>(2) 18 of the 24 pages withheld in part were also withheld in part based on exemptions (b)(7)(E) and (b)(7)(F), which were used to withhold the BOP's techniques and procedures for |

| | | identified as not agency records | | | gathering evidence used for investigative and potential law enforcement purposes, the disclosure of which could enable inmates to circumvent, countermeasure, and/or nullify the effectiveness of the BOP's investigative and intelligence processes. Further, disclosure of this information could endanger the life or physical safety of BOP staff or other third parties involved, as inmates or their confederates may seek to retaliate against staff involved in the monitoring and transfer of inmates.<br><br>(3) 18 pages identified as not agency records are copies of Veytia's Pre-sentence Investigation Report (PSR) and Statement of Reasons (SOR).  As PSRs and SORs are under the direct control of the court of jurisdiction, the BOP considers them not agency records. |
|---|---|---|---|---|---|
| **FOIA Request 2020-04088** | | | | | |
| **Doc #** | **Total Pages** | **Redacted Pages** | **Document Description** | **Exemption** | **Justification** |
| 1 | 47 | 22 pages released in full, 7 pages withheld in part; 18 pages were not agency records | CTU file regarding recommendation transfer of Veytia to CMU | (b)(5)<br>(b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | (1) 1 of the 7 pages withheld in part was withheld based on Exemption (b)(5), which was used to withhold the deliberative process and recommendations of lower-level staff regarding the housing proposals of Plaintiff. The redacted information did not constitute or contain a final decision.<br><br>(2) 3 of the 7 pages withheld in part were withheld based on Exemptions (b)(6) and (b)(7)(C), which were used to withhold the names of BOP staff members.  Disclosure of this information would constitute an unwarranted invasion of personal privacy.<br><br>(3) 4 of the 7 pages withheld in part were withheld based on Exemptions (b)(7)(E) and (b)(7)(F), which were used to withhold the BOP's techniques and procedures for gathering evidence used for investigative and potential law enforcement |

| Doc # | Total Pages | Redacted Pages | Document Description | Exemption | Justification |
|---|---|---|---|---|---|
| | | | | | purposes, the disclosure of which could enable inmates to circumvent, countermeasure, and/or nullify the effectiveness of the BOP's investigative and intelligence processes. Further, disclosure of this information could endanger the life or physical safety of BOP staff or other third parties involved, as inmates or their confederates may seek to retaliate against staff involved in investigations and intelligence operations.<br><br>18 of the pages were previously identified as withheld in full and are copies of the Veytia's PSR and SOR, which are now identified as not agency records. |
| 2 | 0 | 0 | Complaints by any inmate regarding one staff member | (b)(7)(C) | (b)(7)(C) was used to neither confirm nor deny the existence of investigatory records related to one specifically identified staff member to protect the privacy interest of third party individuals. |

**FOI Request 2021-03892**

| Doc # | Total Pages | Redacted Pages | Document Description | Exemption | Justification |
|---|---|---|---|---|---|
| 1 | 270 | 59 pages released in full; 113 pages withheld in part; 30 pages withheld in full; 14 pages are not agency records; 54 pages entirely duplicative | SIS File from MDC Brooklyn, records from FCI Pekin, Illinois and records from USP Marion, Illinois regarding Veytia to include records regarding transfer to a CMU | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | (1) 66 pages of 113 pages withheld in part were withheld based on Exemptions (b)(6) and (b)(7)(C) only. Exemptions (b)(6) and (b)(7)(C) were used to withhold the names and initials of BOP staff members; names and register numbers of other inmates; and names, dates of birth, social security numbers, passport numbers, addresses, and telephone numbers of other third party individuals. Disclosure of this information would constitute an unwarranted invasion of personal privacy.<br><br>(2) 44 pages of the 113 pages withheld in part were withheld based on Exemptions (b)(6), (b)(7)(C), b(7)(E) and b(7)(F). Exemptions (b)(6) and (b)(7)(C) were used to withhold the names and initials of BOP staff members; names and register numbers of other inmates; and names, dates of birth, social security numbers, passport numbers, addresses, and telephone numbers of other third party individuals. Disclosure of this |

| | | | | |
|---|---|---|---|---|
| | | | | information would constitute an unwarranted invasion of personal privacy. Exemptions b(7)(E) and b(7)(F) were used to withhold information detailing the daily techniques and operations of the MDC Brooklyn facility, including the routine usage of internal safety measures and the movement of detainees/inmates. Further, disclosure of this information could endanger the life or physical safety of BOP staff or other third parties involved, as inmates or their confederates may seek to retaliate against staff involved in investigation and intelligence operations<br><br>(3) 1 page of the 113 pages withheld in part was withheld in part based on Exemption (b)(5) to withhold the proposal and recommendation of staff regarding management and housing of Veytia which contained no final determination.<br><br>(4) 3 pages of 113 pages withheld in part were withheld based solely on Exemptions b(7)(E) and b(7)(F), which were used to withhold BOP's techniques and procedures for gathering information used for classification matters that if were released would likely cause harm to the individual subject of the record. Further, disclosure of this information could endanger the life or physical safety of BOP staff or other third parties involved, as inmates or their confederates may seek to retaliate against staff involved in investigation and intelligence operations<br><br>(5) 8 of the 30 pages withheld in full were withheld based on Exemptions (b)(6) and (b)(7)(C). Exemptions (b)(6) and (b)(7)(C) were used to withhold 6 pages of background/criminal history checks of third party individuals wishing to visit Veytia, 1 page of a third party individual's state driver's license and 1 page of a third party inmate's BOP quarter's assignment |

| | | | | | history. Disclosure of this information would constitute an unwarranted invasion of personal privacy.<br><br>(6) 5 of the 30 pages withheld in full were withheld based solely on Exemptions (b)(7)(E) and (b)(7)(F), which were used to withhold information supporting classification assignments specifically related to Central Inmate Monitoring that if were released would likely cause harm to the individual subject of the record. Further, disclosure of this information could endanger the life or physical safety of BOP staff or other third parties involved, as inmates or their confederates may seek to retaliate against staff involved in investigation and intelligence operations<br><br>(7) 17 of the 30 pages withheld in full were withheld based on Exemptions (b)(6), (b)(7)(C), b(7)(E) and b(7)(F). Exemptions (b)(6) and (b)(7)(C) were used to withhold the names of BOP staff members; names and register numbers of third party inmates and names of other third party individuals relaying information to the BOP. Disclosure of this information would constitute an unwarranted invasion of personal privacy. 13 of the 30 pages withheld in full based also on Exemptions (b)(7)(E) and (b)(7)(F), which were used to withhold information supporting classification assignments specifically related to the Central Inmate Monitoring program that if were released would likely cause harm to the individual subject of the record and other third party individuals. 3 of the 30 pages withheld in full based on Exemptions (b)(7)(E) and (b)(7)(F) were used to withhold techniques and procedures for gathering evidence used for investigative and potential law enforcement purposes, the disclosure of which could enable inmates to circumvent, countermeasure, and/or nullify the effectiveness of the BOP's investigative and intelligence processes. Further, disclosure of this information could endanger the life or |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | physical safety of BOP staff or other third parties involved, as inmates or their confederates may seek to retaliate against staff involved in investigations and intelligence operations.<br><br>(7) 14 of the pages previously identified as WIF are copies of portions of Veytia's PSR and SOR are now identified as not agency records. |
| 2 | 25 | 4 pages released in full; 16 withheld in part; 5 pages withheld in full | CTU Profile and Assessment regarding Veytia | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | (1) 14 of the 16 pages withheld in part were based on Exemptions (b)(6) and (b)(7)(C), which were used to withhold the names of BOP staff members and the names and register numbers of third party inmates. Disclosure of this information would constitute an unwarranted invasion of personal privacy.<br><br>(2) 11 of the 16 pages withheld in part were based on Exemptions (b)(7)(E) and (b)(7)(F), which were used to withhold the BOP's techniques and procedures for gathering evidence used for investigative and potential law enforcement purposes, the disclosure of which could enable inmates to circumvent, countermeasure, and/or nullify the effectiveness of the BOP's investigative and intelligence processes. Further, disclosure of this information could endanger the life or physical safety of BOP staff or other third parties involved, as inmates or their confederates may seek to retaliate against staff involved in investigations and intelligence operations.<br><br>(3) 2 of 5 pages withheld in full were withheld based on Exemptions (b)(6) and (b)(7)(C), which were used to withhold information regarding third party inmate investigations.<br><br>(4) 1 of the 5 pages withheld in full was withheld based on Exemptions (b)(7)(E) and (b)(7)(F), in addition to (b)(6) and (b)(7)(C), which were used to withhold the BOP's techniques and procedures for gathering evidence used for investigative and potential law enforcement purposes, the disclosure of which |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | could enable inmates to circumvent, countermeasure, and/or nullify the effectiveness of the BOP's investigative and intelligence processes. Further, disclosure of this information could endanger the life or physical safety of BOP staff or other third parties involved, as inmates or their confederates may seek to retaliate against staff involved in investigation and intelligence operations<br><br>(5) 3 of the 5 pages withheld in full were withheld solely based on Exemptions (b)(7)(E) and (b)(7)(F), which were used to withhold the BOP's techniques and procedures for gathering evidence used for investigative and potential law enforcement purposes, the disclosure of which could enable inmates to circumvent, countermeasure, and/or nullify the effectiveness of the BOP's investigative and intelligence processes. Further, disclosure of this information could endanger the life or physical safety of BOP staff or other third parties involved, as inmates or their confederates may seek to retaliate against staff involved in investigation and intelligence operations. |
| 3 | 3216 | 1220 pages released in full; 1996 pages withheld in part | Lieutenant Daily Logs from MDC Brooklyn, 1/1/2019 through 3/26/2021 | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br>(b)(7)(F) | (1) 84 of the 1996 pages were withheld in part based solely on Exemptions (b)(6) and (b)(7)(C), which were used to withhold the names of BOP staff members and third party inmate names and register numbers. Disclosure of this information would constitute an unwarranted invasion of personal privacy.<br><br>(2) 1912 of the 1996 pages were withheld in part based solely on Exemptions (b)(6) and (b)(7)(C), which were used to withhold the names of BOP staff members and third party inmate names and register numbers. Disclosure of this information would constitute an unwarranted invasion of personal privacy.<br><br>(3) 1912 of 1996 pages were withheld in part based on Exemptions (b)(7)(E) and (b)(7)(F), which were used to |

| | | | | | withhold information detailing the daily techniques and operations of the MDC Brooklyn facility, including the routine usage of internal safety measures and the movement of detainees/inmates. Further, disclosure of this information could endanger the life or physical safety of BOP staff or other third parties involved, as inmates or their confederates may seek to retaliate against staff involved in investigation and intelligence operations |
|---|---|---|---|---|---|
| **FOIA Request 2021-000836** | | | | | |
| Doc # | Total Pages | Redacted Pages | Document Description | Exemption | Justification |
| 1 | 198 | 198 | Emails between Veytia and 4 specifically identified email addresses | (b)(6) (b)(7)(C) | (1) 198 pages were withheld in part based on Exemptions (b)(6) and (b)(7)(C), which were used to withhold email addresses of private citizens. Disclosure of this information would constitute an unwarranted invasion of personal privacy. |